# Third District Court of Appeal

## State of Florida

Opinion filed February 24, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-27
Lower Tribunal Nos. 14-12640 SP and 19-23 AP

_____

**David Rivera,**
Appellant,

vs.

**State Farm Mutual Automobile Insurance Company,**
Appellee.

An Appeal from the County Court for Miami-Dade County, Elijah A. Levitt, Judge.

George A. David, for appellant.

Akerman LLP, Tracy T. Segal (West Palm Beach), Marcy Levine Aldrich, and Nancy A. Copperthwaite, for appellee.

Before FERNANDEZ, HENDON, and GORDO, JJ.

FERNANDEZ, J.

Plaintiff David Rivera appeals the county court's Final Judgment entered in favor of defendant State Farm Mutual Automobile Insurance Company, as well as the court's order denying Rivera's motion for rehearing. The issue before this Court is whether Rivera's pre-suit demand letter sent to State Farm pursuant to section 627.736(10), Florida Statutes (2014) met the specificity requirements demanded in that statute. For the reasons that follow, we find that Rivera's letter was deficient under the personal injury protection ("PIP") statute and thus affirm the county court's orders on appeal.

## FACTS

State Farm Mutual Automobile Insurance Company issued an automobile insurance policy with PIP benefits up to $10,000.00 to Rivera, the insured. Rivera's policy stated the following:

> We will pay in accordance with the No-Fault Act properly billed and documented reasonable charges for bodily injury to an insured caused by an accident resulting from the ownership, maintenance, or use of a motor vehicle as follows:
>
> 1. Medical Expenses
>
> We will pay 80% of properly billed and documented medical expenses, but only if that insured receives initial services and care from a provider described in A. below within 14 days after the motor vehicle accident that caused the bodily injury to the insured.

Rivera alleges he was injured in a car accident on March 28, 2014 while the policy was in effect. Three medical providers submitted bills to State Farm

2

for medical services rendered to Rivera. These bills included a physician visit in April 2014, an imaging exam in July 2014, and multiple treatment sessions at Chiropractic Clinics of South Florida between April and August 2014. State Farm paid the medical bills submitted by these providers, which Rivera does not dispute. State Farm did not receive any other medical bills for Rivera.

In Florida, the "PIP statute requires reimbursement of transportation costs incurred in connection with medical treatment that is reasonably medically necessary." Malu v. Security Nat'l. Ins. Co., 898 So. 2d 69, 74 (Fla. 2005). Therefore, on July 10, 2014, Rivera's counsel sent his first PIP benefits transportation costs claim to State Farm. Rivera sought to recover PIP transportation benefits for sixteen (16) treatment dates at "Kendall Chiropractic." State Farm claimed it never received any bills from an entity named Kendall Chiropractic for services rendered to Rivera. The July 10, 2014 letter sent by Rivera stated, in part, the following:

> David Rivera owned his vehicle and traveled from 15341 S.W. 153rd Street for 16 treatments with Kendall Chiropractic and returned to 15341 S.W. 153rd Street for 96 [sic]. Accordingly [sic] David Rivera drove 96 miles for a partial portion of his medical treatment in this matter. David Rivera's reasonable transportation expense is .61 cents a mile.

This letter did not list the treatment dates, the address for Kendall Chiropractic, nor the total dollar amount for each trip that State Farm would need to pay to avoid Rivera proceeding with his lawsuit. Additionally, the

3

letter mistakenly stated that he traveled to Kendall Chiropractic instead of Chiropractic Clinics of South Florida where Rivera was actually treated.

On July 25, 2014, State Farm sent Rivera a letter requesting that he provide the dates of his sixteen trips and the number of miles for each date that Rivera traveled to and from his medical provider. On August 7, 2014, Rivera sent a second letter to State Farm specifying each of the dates Rivera traveled for treatment, this time listing only twelve dates instead of sixteen. The letter further stated that Rivera traveled an average of six miles for each date listed, but it did not provide the amount Rivera incurred on each date.

Thereafter, Rivera's attorney sent an August 11, 2014 pre-suit demand letter to State Farm titled, "Demand Letter Under FS 627.736(10)." This letter attached Rivera's July 10, 2014 letter, which had requested reimbursement for twelve travel dates. However, the letter provided no further information regarding the transportation expenses claim resulting from Rivera's March 2014 automobile accident.

On September 17, 2014, State Farm sent Rivera's attorney a letter stating that:

> [Y]our correspondence does not comply with F.S. 627.736(10) in that your office failed to state with specificity or include "an itemized statement specifying each exact amount, date of treatment, service or accommodation and the type of benefit claimed to be due."

Lastly, your correspondence may not comply with Florida Statue 627.736(10) as it fails to state the complete/exact name of the insured upon which such benefits are being sought.

However, since now overdue, please find the enclosed drafts which include indemnity, interest penalty and postage.
…

We reserve our right to raise any defenses concerning the validity of the demand letter or any other defenses that relate to this claim for No-Fault benefits.

State Farm paid Rivera a total of thirty-two dollars and fifty-four cents ($32.54) for twelve travel dates at six miles per visit and fifty-six-and-a-half cents ($0.56.5) per mile at the eighty percent (80%) PIP reimbursement rate, plus sixteen cents ($0.16) interest for a total of thirty-two dollars and seventy cents ($32.70).

Because State Farm paid Rivera 56.5 cents per mile and not the 61 cents per mile he requested, Rivera claimed State Farm still owed him $2.59. Accordingly, he sued State Farm in September 2014 in Miami-Dade County Court to recover the alleged overdue no-fault mileage benefits. Importantly, under section 627.428 of the Florida Insurance Code, Rivera also claimed he was entitled to attorney's fees for being forced to sue State Farm.

State Farm filed affirmative defenses including its third affirmative defense that Rivera's pre-suit demand letter for the alleged transportation benefits failed to comply with section 627.736(10) because it failed to "state

with specificity or include an itemized statement specifying each exact amount, date of treatment, service or accommodation, and the type of benefits claimed to be due" while not taking into account payments made by the State Farm in this claim. Thereafter, Rivera filed an Amended Complaint in March 2015. The Amended Complaint does not provide the name of the medical provider, the medical provider's address, the mileage for which Rivera requests reimbursements, the total amount owed, the dates of travel, or the amount per mile requested.

State Farm then moved for summary judgment in January 2016 claiming Rivera failed to comply with section 627.736(10) because the demand letter lacked the specificity required by the statute. In support of its motion, State Farm filed the affidavits of Betsy Potter and Anthony Romney (State Farm employees assigned to Rivera's claim). Potter affirmed that State Farm received medical bills on behalf of Rivera from three providers but never received anything from Kendall Chiropractic. She stated that State Farm received the July 10, 2014 letter, as well as the August 11, 2014 letter titled "Demand Letter Under FS 627.736(10)" which attached a copy of the July 10, 2014 letter. Potter stated neither letter indicated the amount that State Farm could have paid to avoid suit. Furthermore, she stated neither letter provided the dates of service on which Rivera incurred the alleged

6

transportation expenses or the addresses which Rivera allegedly traveled to and from.

In Romney's affidavit, he affirmed that State Farm sent a letter on July 25, 2014 to Rivera's counsel requesting an itemized list of dates and number of miles traveled relating to Rivera's request for mileage reimbursement. Romney further stated that Rivera responded with a letter dated August 7, 2014. The August 7, 2014 letter was attached to Romney's affidavit and stated "Mr. Rivera traveled on average six miles using the most efficient Google maps route on: April 1, 2014; April 7, 2014; April 9, 2014; April 11, 2014; April 16, 2014; April 18, 2014; April 21, 2014; April 23, 2014; April 25, 2014; April 28, 2014; April 30, 2104 and May 2, 2014." No other information was provided in the letter. Both affidavits further attached business records, including medical bills submitted to State Farm and the previously discussed correspondence between State Farm and Rivera's counsel. In addition, State Farm filed a copy of Rivera's automobile policy, as well as the transcript of his deposition.

On April 20, 2017, Rivera filed his "Opposition to Defendant's Motion for Summary Judgment." He claimed in his motion that:

19) In the instant case, Defendant's summary judgment motion contends that both Plaintiff's initial demand letter dated July 10,

2014 as well as Plaintiff's pre-suit demand letter dated August 11, 2014 are defective.

20) The crux of Defendant's summary judgment motion is that because Plaintiff's July 10, 2014 initial demand letter was defective, Plaintiff's August 11, 2014 pre-suit demand letter is also defective. … However, this legal theory raised in Defendant's summary judgment motion is different from the legal theory raised in Defendant's Third Affirmative Defense. Defendant's third affirmative defense addresses Rivera's claim of an insufficient pre-suit demand letter.
…

24) Defendant's Third Affirmative Defense only claims an alleged deficiency in Plaintiff's August 11, 2014 pre-suit demand letter.
…

34) Since Defendant's summary judgment motion presented a different legal theory attacking Plaintiffs' pre-suit demand letter in this case than the theory raised in its Answer To Plaintiff's amended complaint, Defendant's summary judgment motion must be denied.

Rivera further argued, in the alternative, that his demand letter placed State Farm on notice of Rivera's claim. He contended that Romney's deposition on September 14, 2016, where he admitted that State Farm paid Rivera's PIP transportation claim directly contradicted State Farm's position argued in its motion for summary judgment. Rivera contended that at Romney's deposition, Romney confirmed that the July 10, 2014 letter was timely received by State Farm. He confirmed that the August 11, 2014 letter was received on August 18, 2014. He stated that the July 10, 2014 letter requested 61 cents per mile, but State Farm did not pay it because the

8

reasonable charges under the policy stated that the state or federal schedule would apply, thus 56.5 cents per mile was reasonable for this claim. Romney stated that the amount in the IRS schedule was the maximum charges in the no fault act in the policy in question. Romney confirmed that State Farm paid Rivera $32.54 for his PIP transportation claim on September 4, 2014, which was based on a federal and state mileage rate pursuant to the IRS guidelines. In addition, on September 21, 2017, Rivera filed "Plaintiff's Motion for Summary Final Judgment," where he argued, in part, that the trial court could not consider State Farm's argument that Rivera's demand letter was insufficient because State Farm did not raise this issue in its pleadings.

On February 14, 2018, Rivera's deposition was taken. He could not answer many of the questions because he stated he could not remember.

On June 20, 2018, a hearing was held before the county court on State Farm's motion for summary judgment. The trial court took everything under advisement and a week later entered summary judgment for State Farm on July 27, 2018. In its very thorough final judgment order, the county court found that the pre-suit demand letter for alleged transportation benefits failed to comply with section 627.736(10) because it failed to "state with specificity or include an itemized statement specifying each exact amount, date of

9

treatment, service or accommodation, and the type of benefits claimed to be due."

Rivera filed a motion for rehearing arguing the same points he argued in response to State Farm's motion for summary judgment. The county court held a hearing on the motion. On January 11, 2019, the trial court denied Rivera's motion for rehearing, as well as his cross-motion for summary final judgment. Rivera then appealed the county court's decision.

Rivera argues that the trial court committed reversible error in granting State Farm's motion for summary judgment by too narrowly construing the statute in favor of precluding Rivera's claim. State Farm answers that the county court correctly granted summary judgment in State Farm's favor due to Rivera's deficient demand letter. For the following reasons, we agree with State Farm and affirm.

### STANDARD OF REVIEW

The standard of review is *de novo*, as the granting of a motion for summary judgment involves a question of law arising from undisputed facts. Florida Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006); Sierra v. Shevin, 767 So. 2d 524, 525 (Fla. 3d DCA 2000). Furthermore, "[b]ecause the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law – specifically, the PIP statute – as well as to

10

interpret the insurance policy, our standard of review is de novo." <u>Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.</u>, 141 So. 3d 147, 152 (Fla. 2013).

## ANALYSIS

The sole issue this Court must decide is whether Rivera's demand letters met the specificity requirements of section 627.736(10). If so, Rivera would be entitled not only to the $2.59 he claims he is owed in transportation costs, but he would also be entitled to his attorney's fees as well, according to section 627.428, Florida Statutes (2014). However, a careful reading of the section 627.736(10) indicates that Rivera's demand letters were deficient under the statute. We thus affirm and write further to clarify what section 627.736(10) requires in a pre-suit demand letter.

"It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis." <u>Knowles v. Beverly Enters.-Fla., Inc.</u>, 898 So. 2d 1, 5 (Fla. 2004). In determining that legislative intent, a court looks first to the statute's plain language**.** <u>Borden v. E.-European Ins. Co.</u>, 921 So. 2d 587, 595 (Fla. 2006). If the statute is clear and unambiguous, "courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." <u>Id.</u> As the Florida Supreme Court stated in <u>Allstate Insurance Company v. Holy Cross Hospital, Inc.</u>, 961 So. 2d 328, 334 (Fla. 2007):

11

"Where the wording of the [No–Fault] Law is clear and amenable to a logical and reasonable interpretation, a court is without power to diverge from the intent of the Legislature as expressed in the plain language...." Warren v. State Farm Mut. Auto. Ins. Co., 899 So. 2d 1090, 1095 (Fla. 2005) (quoting Rodriguez, 808 So. 2d at 85).

"Further, words must be given their plain meaning and statutes should be construed to give them their full effect." Jones v. State, 966 So. 2d 319, 326 (Fla. 2007) (citation omitted). In addition, "[w]here possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act." Woodgate Dev. Corp. v. Hamilton Inv. Trust, 351 So. 2d 14, 16 (Fla. 1977).

The stated purpose of Florida's Motor Vehicle No-Fault Act is "to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits . . . ." § 627.731, Fla. Stat. (2014). "Without a doubt, the purpose of the no-fault statutory scheme is to 'provide swift and virtually automatic payment so that the injured insured may get on with his [or her] life without undue financial interruption.'" Ivey v. Allstate Ins. Co., 774 So. 2d 679, 683-84 (Fla. 2000) (quoting Gov't Emps. Ins. Co. v. Gonzalez, 512 So. 2d 269, 271 (Fla. 3d DCA 1987)).

In 2001, the legislature amended the statute to require an insured to provide a pre-suit notice of intent to initiate litigation. § 627.736(11)(a), Fla.

Stat. (2001).[1] Section 627.736(10), Florida Statutes (2014), requires a demand letter as a condition precedent to an insured filing a lawsuit to recover PIP benefits. In its current form, section 627.736(10) provides, in pertinent part, the following:

(10) Demand letter.--

(a) As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer. Such notice may not be sent until the claim is overdue, including any additional time the insurer has to pay the claim pursuant to paragraph (4)(b).

(b) The notice must state that it is a "demand letter under s. 627.736" and state with specificity:

1.    The name of the insured upon which such benefits are being sought, including a copy of the assignment giving rights to the claimant if the claimant is not the insured.

2.    The claim number or policy number upon which such claim was originally submitted to the insurer.

3.    To the extent applicable, the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim; and an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefit claimed to be due. A completed form satisfying the requirements of paragraph (5)(d) or the lost-wage statement previously submitted may be used as the itemized statement. To the extent that the demand involves an insurer's withdrawal of payment under paragraph (7)(a) for future treatment not yet rendered, the claimant shall attach a copy of the insurer's notice withdrawing such payment and an itemized statement of the

---

[1] Subsection (11) was later renumbered (10).

13

type, frequency, and duration of future treatment claimed to be reasonable and medically necessary.

The statute also subjects an insurer who pays benefits late to penalties and imposes attorney's fees if the insured is required to file suit due to late payment by the insurer. United Auto. Ins. Co. v. Rodriguez, 808 So. 2d 82 (Fla. 2001); see also § 627.428, Fla. Stat. (2014).

Once an insured files his insurance claim and the benefit payments are overdue, the statute is very specific regarding the detailed information the insured is required to furnish to the insurer before the insured can proceed to file a lawsuit. Thus, when filing a PIP claim that includes transportation benefits, the insured must give the defendant written notice of intent to initiate litigation by providing a pre-suit demand letter before the lawsuit can be filed. As the statute clearly states, the letter "shall state with specificity" "the name of any medical provider who rendered to an insured the treatment, services, accommodations, or supplies that form the basis of such claim" **and** "an itemized statement specifying **each exact amount**, the date of treatment, service, or accommodation, and the type of benefit claimed to be due." (emphasis added). In addition, the purpose of the demand letter is not just notice of intent to sue. The demand letter also notifies the insurer as to the exact amount for which it will be sued if the insurer does not pay the claim. As the 11th Circuit Court's Appellate Division stated in Venus Health

14

Center (a/a/o Joally Rojas) v. State Farm Fire & Casualty Co., 21 Fla. L. Weekly Supp. 496a (Fla. 11th Cir. Ct. Mar. 13, 2014):

> If the intent of § 627.736(10) is to reduce the burden on the courts by encouraging the quick resolution of PIP claims, it makes sense to require the claimant to make a precise demand so that the insurer can pay and end the dispute before wasting the court's and the parties' time and resources. If the provider simply includes in its demand letter a statement of all the charges incurred -- as Venus did here -- without even deducting the amount the insurer already paid then it is not stating an exact amount that the insurer owes. If the PIP insurer must guess at the correct amount and is wrong, then the provider sues and exposes the insurer to attorney's fees. Before being subject to suit and attorney's fees, the insurer is entitled to know the exact amount due as fully as the provider's information allows.

Florida county courts, circuit courts, and the appellate divisions of circuit courts have varied in their reading of the statute and the specificity required by section 627.736(10). Many have interpreted the language of section 627.736 to require a strict construction of section 627.736(10), such as in Menendez v. State Farm Mut. Auto. Ins. Co., No. 12-1780-SP-25, slip op. (Fla. Miami-Dade Cty. Ct. June 4, 2018) ("specifications of § 627.736(1), Fla. Stat. … must be strictly construed"); Chambers Medical Group, Inc. (a/a/o Marie St. Hillare) v. Progressive Express Ins. Co., 14 Fla. L. Weekly Supp. 207a (13th Cir. App. Ct. Dec. 1, 2006) ("strict compliance with the notice requirements is required to effect the purpose of the statute"); Venus Health Center (a/a/o Joally Rojas) v. State Farm Fire & Casualty Co., 21 Fla. L.

Weekly Supp 496a (Fla. 11th Cir. Ct. Mar. 13, 2014) (a claimant's pre-suit demand letter is required to reflect payment(s) made by an insurer). But others have interpreted the statute's requirements more loosely, such as in Ortega v. Progressive American Ins. Company, 17 Fla. L. Weekly Supp. 982b, 11th Cir. Ct. July 2, 2010 (demand letter sent by the medical provider, not the insured who filed suit against the insurer, deemed sufficient under section 627.736(11)); Progressive Express Ins. Co. v. Polynice, 12 Fla. L. Weekly Supp 1015b (9th Cir. Ct. July 18, 2015) (demand letter deemed sufficient under section 627.736(11) where it included with specificity the exact mileage due and the exact date range in which the insured incurred the transportation expenses); L.P. Medical, Inc. a/a/o Regla Arenas v. State Farm Mutual Automobile Ins. Co., 22 Fla. L. Weekly Supp 463a (11th Cir. Ct/ Oct. 21, 2014) (the trial court found the plaintiff substantially complied with section 627.736(10) in stating within her demand letter the named insured, copy of the assignment, claim number, policy number, dates of service, amount billed, amount claimed to be due and attaching a copy of the medical provider's itemized ledger).

The Fourth District Court of Appeal in MRI Associates of America, LLC v. State Farm Fire & Casualty Company, 61 So. 3d 462, 465 (Fla. 4th DCA 2011) stated:

16

The language of subsection 627.736(10)(b)3. requires precision in a demand letter by its requirement of an "itemized statement specifying each exact amount"; it also allows a subsection 627.736(5)(d) health insurance claim form to be "used as the itemized statement." A necessary conclusion of this language is that the statute requires the same precision in a subsection 627.736(5)(d) health insurance claim form as it does in a subsection 627.736(11)(b)3. demand letter. This requirement makes sense. The statute seeks to encourage "the speedy payment of medical bills arising out of an auto accident by subjecting an insurer who pays late to penalties and imposing attorney's fees if suit is required." *Fountain Imaging*, 14 Fla. L. Weekly Supp. at 614. The statute mandates that the amount at issue for a bill be specified early in the claims process. This requirement of precision in medical bills discourages gamesmanship on the part of those who might benefit from confusion and delay. The statutory requirements surrounding a demand letter are significant, substantive preconditions to bringing a cause of action for PIP benefits. *See Menendez v. Progressive Express Ins. Co.*, 35 So. 3d 873, 879–80 (Fla. 2010).

We agree with the court in MRI Associates that the language of subsection 627.736(10)(b)3. "requires precision in a demand letter by its requirement of an 'itemized statement specifying each exact amount.'" MRI Assocs., 61 So. 3d at 465.

In addition, we agree with the trial court's interpretation of the statute in the final judgment on appeal. The trial court provided a thorough analysis regarding the statutory interpretation of this statute. The trial court quoted the Eleventh Judicial Circuit County Court case, Menendez v. State Farm, supra, wherein the county court stated:

17

A "substantial compliance" standard would trigger significant litigation as to sufficiency of the papers attached to a demand letter, the result of which would be that payment of claims would cease to be automatic, and providers would be relieve of their obligation under the Statute. … Inaccurate, misleading, illegibly, or stale information contained in a demand does not strictly comply with the statutory requirement.

It is clear from the legislative intent and the supporting case law that strict specificity must be adhered to regarding the demand letter requirement. . . . The Court is not persuaded by Plaintiff's arguments that Defendant should be required to interpret and/or review its own records to make sense of Plaintiff's vague demand letter.

<u>Menendez</u> (internal citations omitted).

In the case before us, the trial court found that the demand letter was deficient because Rivera did not provide the address of the medical provider or any dates of service in his July 10, 2014 attachment to the demand letter, and he identified an incorrect medical provider for the alleged services rendered. No evidence was introduced regarding the existence of Kendall Chiropractic. The trial court further found that the testimony provided to the court supported the finding of a deficient demand letter. As evidenced by State Farm's representative Romney, State Farm paid for the mileage that Rivera requested in the itemized August 7, 2014 letter. In addition, Rivera testified at his deposition that he "(1) is unaware of Kendall Chiropractic, (2) had no recollection of the name and address of the actual medical provider, and (3) could not state with any degree of specificity how he came up with

18

the amount of 61 cents per mile." Thus, the trial court found that the "testimony on record belies a finding of a valid demand letter."

We further agree with how the trial court in the case before us distinguished Progressive Express Insurance Company v. Polynice, supra, a case cited by Rivera in support of his position. We thus cite to that portion of the trial court's Final Judgment with approval. In its Final Judgment, the trial court stated:

> Finally, the Court recognizes the Ninth Circuit Court's impressive exploration of the legislative intent behind Florida Statute § 627.736(10) in *Progressive Express Insurance Company v. Michelet Polynice*, Fla. L. Weekly Supp. 1015b (Fla. 9th Cir. Ct. July 1, 2005), but the facts are distinguishable from the present case. In *Polynice*, the Plaintiff's demand letter contained the dates of treatment, the total miles, and "the appropriate itemization of the benefits claimed as outstanding." *Id*. The Ninth Circuit also found that the Plaintiff provided the Defendant with mileage forms referencing the name of the medical provider, dates of treatment, and total number of miles – all of which matched the information provided in the demand letter. *Id*. Therefore, the demand letter in Polynice passed muster.
>
> The demand letter in the present case does not comport with the legislative intent described in Polynice. A demand letter containing either a fictitious or erroneous name of a medial provider with no physical address for unspecified dates of treatment is insufficient to place an insurance company on notice of what bills or debts remain unpaid. The Court also notes that State Farm attempted to clarify the claim, but Plaintiff further muddied the waters by providing the August 7, 2014, letter in response to the request for clarification. Only four days after the August 7, 2014, letter, in which he requested payment for twelve visits, Plaintiff sent the demand letter with the July 10, 2014 letter attached, in which he requested payment for sixteen visits. The

19

> circumstances surrounding the demand letter in this case are a far cry from the demand letter and mileage forms considered by the Polynice court.
>
> A plain reading of Plaintiff's demand letter, and attachment thereto, shows that no genuine issue of material fact exists as to the demand letter's failure to comply with Florida Statute § 627.736(10). The record evidence supports this finding. Wherefore, Defendant is entitled to judgment as a matter of law.

We thus agree that under the facts of this record, Rivera did not serve State Farm with a valid pre-suit demand letter as required by section 627.736(10). The record reflects that Rivera provided State Farm with inaccurate or inconsistent information beginning on July 10, 2014 when Rivera's counsel sent his first letter to State Farm to make Rivera's claim for his PIP transportation expenses.

## CONCLUSION

The correct remedy when a party has failed to comply with pre-suit notice requirements is summary judgment. See Bridgeport, Inc. v. Tampa Roofing Co., 903 So. 2d 306 (Fla. 2d DCA 2005). Accordingly, for the reasons expressed above, we hold that in order for an insured's pre-suit demand letter to comply with section 627.736(10), it must provide the exact information listed in the statute. Rivera's August 11, 2014 letter failed to include an itemized statement specifying the exact amount of requested reimbursement for each trip, the dates of treatment, service or

20

accommodation as required by the statute, whether he was seeking reimbursement for twelve or sixteen trips, and the demand letter did not state with specificity the amount due and owed or the addresses to which Rivera allegedly traveled for each trip to incur his mileage costs. Thus, it was deficient under section 627.736(10). Therefore, the trial court was correct in entering summary judgment in State Farm's favor for Rivera's failure to comply with section 627.736(10), Florida Statutes (2014). We thus affirm the county court's July 27, 2018 Final Judgment for the Defendant, as well as the January 11, 2019 Order Denying Plaintiff's Motion for Rehearing.

Affirmed.